UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ROGELIO CUEVAS ESPINOZA,

Petitioner,

v.

SHAWN HATTON, Warden,

Respondent.

Case No.:  10-cv-397-WQH-BGS

**ORDER**

HAYES, Judge:

The matter before the Court is the Report and Recommendation of the Magistrate Judge (ECF No. 158) recommending that the Court deny Petitioner Rogelio Cuevas Espinoza's Petition for Writ of Habeas Corpus (ECF No. 1) following remand and an evidentiary hearing.

**I.   FACTUAL BACKGROUND[1]**

On March 10, 2001, Rosea Barajas held a party at a convention hall in National City to celebrate the baptism of her son. (Lodgment 6 at 2). Sandy Barajas, sister of Rosea Barajas and wife of Petitioner, is the child's godmother. *Id.* "[Petitioner] attended the party but there was conflicting evidence about whether he was expected there. Arturo, also known as Pedro

---

[1] The Court quotes the facts from its September 10, 2013, Order (ECF No. 47), which recited the undisputed factual findings of the California Court of Appeal. *See* 28 U.S.C. § 2254(e)(1) (a presumption of correctness attaches to state court determinations of factual issues).

Rivera, and his brother, Adan Rivera, were told [that Petitioner] would not attend the party." *Id.* at 2-3 (alterations omitted). "[T]here were ill feelings between Adan and [Petitioner] due to a fight between the two about a year earlier." *Id.* at 2.

Shortly after the Rivera brothers arrived at the party, "a fight erupted inside the hall" involving Petitioner, the Rivera brothers and others. *Id.* The evidence conflicted as to whether Petitioner or Adan initiated the fight, but the fight was eventually broken up by others. *Id.* at 2-3. The fight left Petitioner injured. *Id.* at 3. "[O]ne witness described seeing a gash above [Petitioner's] eye." *Id.* "Adan believed he had broken [Petitioner's] nose because he was bleeding profusely." *Id.* Barajas told everyone to leave the party. *Id.* Petitioner exited through a back door and the Rivera brothers and others left through the hall's front entrance. *Id.*

"Soon thereafter, [Petitioner] approached the Rivera brothers with a semiautomatic gun in his hand. Adan ran back towards the hall. [Petitioner] fired into the air. There was evidence [that Petitioner] pointed the gun at [Arturo] Rivera, fired at [Arturo] Rivera's feet or lower body, fired at the ground, fired toward the crowd of people outside the hall and fired toward [Arturo] Rivera as he fled. Some people struggled with [Petitioner] for the gun." *Id.* A neighbor heard a man yell, "I'm going to kill you, motherfucker," and saw the man "chasing [Arturo] Rivera and shooting at him, while [Arturo] Rivera crouched behind a truck." *Id.* Arturo Rivera was shot in the right eye, which he lost as a result. *Id.* "There was not stippling or burning around the entrance wound, indicating the bullet was fired from a distance of more than three or four feet." *Id.* Eight cartridge casings and a bullet fragment were recovered. *Id.* Based on the distribution of the cartridge casings, it was determined that all the bullets had been fired from the same gun by a gunman who had been moving while firing the gun. *Id.* "A number of people from the party went to the police station to be interviewed. [Petitioner's] wife told the group, 'nobody rats, nothing will happen.' The interviews were taped." *Id.*

Petitioner fled to Mexico. *Id.* at 4.

In 2005, San Diego police officers stopped a car with expired registration tags that was driven by Petitioner. *Id.* "[Petitioner] was very nervous, and he provided the officers with a driver's license in the name of Victor Gallego and said the car belonged to a female friend." *Id.* Suspecting the driver's license was false, the police conducted a records check. *Id.* "As soon as [Petitioner] heard he was going to be arrested, he knocked one of the officers to the ground

and fled across a busy street. He was arrested nearby in a culvert." *Id.*

(ECF No. 47 at 1-3 (alterations in original)).

## II.   PROCEDURAL BACKGROUND

### a.  <u>State Proceedings</u>

In March 2006, approximately five years after the shooting, Petitioner was tried by a jury in the Superior Court for the State of California, County of San Diego. Petitioner's case consisted entirely of his own testimony. The California Court of Appeal summarized Petitioner's version of the events:

> [Petitioner] testified Barajas invited him to the party because his wife was going to be the child's godmother. He arrived early at the party because his wife said they needed help, but before contacting his wife, he had something to eat at the hall. About 20 to 40 minutes later, he started looking for his wife. He did not find her inside the hall, and he was about to look outside when the Rivera brothers and others arrived. [Petitioner] indicated to Adan that he wanted to go outside. Adan, without warning, punched [Petitioner]. [Petitioner] defended himself.
>
> After the fight ended, [Petitioner] went out the back door of the hall. He had been badly beaten and was afraid and confused. His uncle told him the Rivera brothers wanted to kill him, handed him a gun and showed him how to use it. As [Petitioner] walked toward his car, the Rivera brothers and other people confronted him. He fired the gun into the ground and into the air to keep them away. He was surrounded by people who were trying to get the gun from him, and he believed they would harm him if they got the gun. During the struggle, the group moved him into the street; he stumbled but did not fall as they went over the curb. He fired the gun until it would fire no more. He also testified the gun fired because people were 'yanking' at his hand. Someone yelled 'Policia' and everybody dispersed. [Petitioner] ran to his car and drove home. He did not turn himself in because he was afraid he would be imprisoned even though he was innocent.

(Lodgment 6 at 4-5).  Petitioner testified that "there was only one gun," that he "never saw anybody else with a gun," and that he was "the only person with a gun." (Lodgment 2, vol. 5, at 751-52).

On March 3, 2006, the jury found Petitioner guilty of mayhem[2] and assault with a semi-automatic firearm,[3] and deadlocked on a count of attempted murder. The court declared a mistrial on the attempted murder count. On September 18, 2006, the court sentenced Petitioner to a prison term of twenty-nine years to life.[4] (Lodgment 6 at 1-2).

On April 13, 2007, Petitioner directly appealed his conviction to the California Court of Appeal. (Lodgments 3-5). Petitioner did not raise an ineffective assistance of counsel claim on direct appeal. On March 12, 2008, the California Court of Appeal unanimously affirmed the rulings of the trial court. (Lodgment 6). On April 20, 2008, Petitioner filed a petition for review with the California Supreme Court. (Lodgment 7). On June 25, 2008, the California Supreme Court summarily denied the petition for review. (Lodgment 8).

On August 31, 2009, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court, asserting several grounds for relief including ineffective assistance of counsel. (Lodgment 9). On October 23, 2009, Petitioner filed a motion for discovery and interrogatories, seeking evidence to substantiate his ineffective assistance of counsel claims. (ECF No. 1-1 at 27-48). On February 10, 2010, the California Supreme Court summarily denied the petition. (Lodgment 10). The court did not rule on the discovery motion.

### b. **Federal Proceedings**

On February 18, 2010, Petitioner filed a Petition for Writ of Habeas Corpus in this Court pursuant to 28 U.S.C. § 2254. (ECF No. 1). Petitioner raises six claims for relief: two claims alleging deprivation of Petitioner's right to due process; three claims alleging

---

[2] Cal. Pen. Code §§ 203; 12022.53(d).

[3] Cal. Pen. Code §§ 245(b); 12022.5(a)(1); 12022.7(a).

[4] Petitioner was sentenced to a four-year term for mayhem and a twenty-five-year to life term for personally discharging a firearm and causing great bodily injury during the mayhem. Cal. Pen. Code § 12022.53(d).

ineffective assistance of counsel; and one claim alleging a violation of *Brady v. Maryland*[5]. In claim three, Petitioner alleges that his trial counsel, Jan Ronis, was ineffective for failing to investigate witnesses to the shooting. Petitioner alleges that Ronis failed to investigate witnesses Miguel Rubio and Sylvia Escamilla, who submitted sworn declarations with the Petition stating that they 1) saw someone other than Petitioner shoot the victim, Arturo Rivera; 2) informed Ronis there was a second shooter; and 3) were not interviewed by Ronis or called to testify at trial. Petitioner further alleges that Ronis failed to investigate witnesses on a list that his ex-wife, Sandy Barajas, provided to Ronis.

On May 28, 2010, Respondent filed an Answer to the Petition. (ECF No. 16).

On September 4, 2012, the Magistrate Judge issued a Report and Recommendation recommending that the Court deny the Petition in its entirety. (ECF No. 40). On September 10, 2013, the Court issued an Order adopting the Report and Recommendation in part, denying the Petition, denying Petitioner's request for an evidentiary hearing, and granting a certificate of appealability as to claim three—that Ronis's failure to investigate witnesses to the shooting constituted ineffective assistance of counsel. (ECF No. 47). Petitioner appealed. (ECF No. 49).

On December 19, 2016, the Court of Appeals for the Ninth Circuit issued its mandate "revers[ing] the district court's denial of [Petitioner]'s habeas petition and remand[ing] to the district court for an evidentiary hearing on counsel's failure to interview the two witnesses," Miguel Rubio and Sylvia Escamilla. (ECF No. 64 at 5). This Court referred the action to the Magistrate Judge to hold an evidentiary hearing and issue a report and recommendation. (ECF No. 65).

The Magistrate Judge held an evidentiary hearing that took place over four days: February 28, 2018; March 2, 2018; March 9, 2018; and September 14, 2018. (ECF Nos. 110, 111, 112, 136). During the hearing the parties submitted numerous exhibits, including

---

[5] 373 U.S. 83 (1963).

police reports that Petitioner received for the first time after remand. The following witnesses testified at the hearing: Daniel Alatorre, Sylvia Escamilla, Sergeant Steve Shephard, Sergeant Estella Cordero, Jan Ronis, Esq., Juan Antonio Lopez, Sandy Barajas, and Barbara Ann Smith, Esq. Neither Miguel Rubio nor Petitioner testified at the hearing.

On August 15, 2019, Respondent filed a Post-Evidentiary Hearing Brief. (ECF No. 152). On September 12, 2019, Petitioner filed a Post-Evidentiary Hearing Brief. (ECF No. 157).

On January 28, 2020, the Magistrate Judge issued a Report and Recommendation. (ECF No. 158). The Report and Recommendation concludes that the scope of the remand is limited to determining whether Petitioner satisfied the first prong of the *Strickland v. Washington*[6] ineffective assistance of counsel inquiry—whether counsel was deficient— by "conduct[ing] 'an evidentiary hearing on counsel's failure to interview the two witnesses', Escamilla and Rubio." (*Id.* at 10 (emphasis omitted) (quoting ECF No. 65 at 5)). The Report and Recommendation concludes that Escamilla and Rubio are not credible witnesses, and Ronis was not deficient for failing to interview them or present their testimony at trial. The Report and Recommendation concludes that Petitioner's other claims regarding Ronis's deficiency are outside the scope of the mandate,  and Ronis was not deficient for failing to interview witnesses other than Escamilla and Rubio who identified a shooter in the police reports that did not match Petitioner's description or for selecting the defenses of self-defense and accident. The Report and Recommendation recommends that the Court find: "(1) Miguel Rubio and Sylvia Escamilla are not credible witnesses; (2) trial counsel was not deficient in not interviewing them and presenting their testimony at trial; (3) trial counsel's actions did not constitute ineffective assistance of counsel; and accordingly, (4) the Petition should be **DENIED**." (*Id.* at 3).

---

[6] 466 U.S. 668 (1984).

On July 8, 2020, Petitioner filed Objections to the Report and Recommendation. (ECF No. 165). Petitioner objects to the Report and Recommendation's conclusion that the scope of the remand is limited to determining the credibility of Escamilla and Rubio and whether Ronis was deficient in failing to interview them or call them to testify at trial. Petitioner objects to the "Report and Recommendation's findings of fact based on police reports." (ECF No. 165 at 29). Petitioner objects to the Report and Recommendation's conclusion that Ronis was not deficient.

On August 3, 2020, Respondent filed a Reply. (ECF No. 170).

## III.   LEGAL STANDARDS

### a.  Review of the Report and Recommendation

The duties of the district court in connection with a report and recommendation of a magistrate judge are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b). The district judge must "make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). The district court need not review de novo those portions of a report and recommendation to which neither party objects. *See Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("Neither the Constitution nor the [Magistrates Act] requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct.").

### a.  Review of the Petition

Review of the Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") because the Petition was filed in 2010, well after AEDPA's effective date. *See Woodford v. Garceau*, 538 U.S. 202, 210 (2003). Under AEDPA, a federal habeas petitioner must demonstrate that the state court's adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d). If a petitioner satisfies subdivision (1) or (2) of § 2254(d), the federal court considers Petitioner's claim de novo. *See Panetti v. Quarterman*, 551 U.S. 930, 953-54 (2007) (when section 2254(d) is satisfied, "[a] federal court must then resolve the claim without the deference AEDPA otherwise requires").

In this case on appeal, the Court of Appeals for the Ninth Circuit determined that "the state court decision constituted an unreasonable application of Supreme Court law under 28 U.S.C. § 2254(d)(1)," and "constituted an unreasonable application of *Strickland* . . . ." (ECF No. 64 at 5, 11). Accordingly, the Court addresses Petitioner's ineffective assistance of counsel claim de novo. *See Frantz v. Hazey*, 533 F.3d 724, 737 (9th Cir. 2008) (en banc) ("[W]here the analysis on federal habeas, in whatever order conducted, results in the conclusion that § 2254(d)(1) is satisfied, then federal habeas courts must review the substantive constitutionality of the state custody de novo.").

## IV.   SCOPE OF THE MANDATE

The Report and Recommendation concludes that "the scope of the remand is clear: the Ninth Circuit 'REVERSE[D] and REMAND[ED] for an evidentiary hearing before the district court on [Petitioner]'s *Strickland* claim to consider whether trial counsel was deficient as well as Escamilla and Rubio's credibility.'" (ECF No. 158 at 8 (first and second alterations in original) (quoting ECF No. 65 at 12)). The Report and Recommendation concludes that the mandate requires the district court to "conduct 'an evidentiary hearing on counsel's failure to interview *the two witnesses*', Escamilla and Rubio . . . . This requires assessing the credibility of the two declarants and whether trial counsel was deficient in not calling them to testify." (*Id.* at 10-11 (quoting ECF No. 65 at 5)). The Report and Recommendation concludes that Petitioner's claims that Ronis was deficient for failing to interview witnesses other than Escamilla and Rubio who provided statements in police

reports purportedly identifying a shooter whose description did not match Petitioner and for selecting the defenses of self-defense and accident are outside the scope of the mandate.

Petitioner objects to the Report and Recommendation's conclusion that the scope of the remand is limited to assessing the credibility of Escamilla and Rubio and whether Ronis was deficient in failing to interview them or call them to testify. Petitioner contends that the mandate allows the Court to consider whether Ronis was deficient for failing to interview witnesses other than Escamilla and Rubio and whether Ronis was deficient for selecting the defenses of self-defense and accidental shooting. Petitioner contends that the police reports from the shooting were not available to Petitioner until August 2017, so "[w]hen the Ninth Circuit reversed and remanded, neither that Court, nor the parties, were aware that several witnesses identified in the police reports had described a shooter who did not match or resemble [Petitioner] . . . ." (ECF No. 165 at 24). Petitioner contends that the police reports and the hearing testimony from one of the witnesses identified in the police reports, Daniel Alatorre, are relevant to Escamilla and Rubio's credibility and "demonstrate that Ronis was deficient in failing to investigate or interview these witnesses and in selecting and presenting his chosen defense." (*Id.* at 25).

Respondent contends that the Report and Recommendation correctly concludes that the scope of the remand limits the Court to assessing Escamilla and Rubio's credibility and whether Ronis was deficient for failing to interview them or call them as witnesses. Respondent contends that whether Ronis was deficient for failing to interview witnesses other than Escamilla and Rubio and whether Ronis was deficient for his selection of a defense is outside the scope of the remand. Respondent contends that the Magistrate Judge gave Petitioner the opportunity to present witnesses at the hearing who identified a shooter to police that did not match Petitioner's description, and the only witnesses Petitioner presented was Daniel Alatorre, whom the Magistrate Judge found not credible. Respondent contends that the Report and Recommendation considers claims outside the scope of the mandate and rejects them on the merits.

"The rule of mandate is similar to, but broader than, the law of the case doctrine." *Stacy v. Colvin*, 825 F.3d 563, 567-68 (9th Cir. 2016) (quoting *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995)). The Court of Appeals for the Ninth Circuit has "repeatedly held, in both civil and criminal cases, that a district court is limited by [the court of appeals'] remand where the scope of the remand is clear." *United States v. Thrasher*, 483 F.3d 977, 982 (9th Cir. 2007) (quoting *Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1172 (9th Cir. 2006)), *as amended* (Apr. 25, 2007). "The rule [of mandate] provides that any 'district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it.'" *Stacy*, 825 F.3d at 568 (quoting *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012), *as corrected* (Feb. 15, 2013)). "The district court may, however, 'decide anything not foreclosed by the mandate.'" *Id.* (quoting *Hall*, 697 F.3d at 1067). "[W]hen a court is confronted with issues the remanding court never considered, the 'mandate[ ] require[s] respect for what the higher court decided, not for what it did *not* decide.'" *Hall*, 697 F.3d at 1067 (second and third alterations in original) (quoting *United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000)). "[I]f a district court errs by violating the rule of mandate, the error is a jurisdictional one." *Thrasher*, 483 F.3d at 982. "[T]he ultimate task is to distinguish matters that have been decided on appeal, and are therefore beyond the jurisdiction of the lower court, from matters that have not[.]" *Kellington*, 217 F.3d at 1093.

In this case, the Court certified Petitioner's third claim for appeal, which included allegations that Ronis was ineffective for failing to investigate and call witnesses Sylvia Escamilla and Miguel Rubio—who would have testified that someone other than Petitioner shot Arturo Rivera—and for failing to investigate witnesses on a list that Petitioner's ex-wife, Sandy Barajas, provided to Ronis.[7] (*See* ECF No. 1-11 at 35-36). Escamilla and Rubio

---

[7] Sandy Barajas states in her declaration submitted with the Petition that the list of witnesses included: Sylvia Escamilla, Miguel Rubio, Juliete Sillas, Rosefe Cuevas, Adolfo Cuevas, Leticia Hernandez, and Antonio Hernandez. (ECF No. 1-7 at 8).

are the only witnesses who submitted declarations stating that they would have testified that someone other than Petitioner shot Arturo Rivera. The court of appeals framed its mandate in terms of the only two witnesses who submitted declarations and did not address Petitioner's allegation that Ronis was deficient for failing to investigate witnesses other than Escamilla and Rubio. The court of appeals stated:

> Escamilla and Rubio both would have testified that someone got the gun away from [Petitioner] and fired it at Arturo . . . . We are convinced that Escamilla and Rubio's testimony creates "a reasonable probability" that "the fact-finder would have had a reasonable doubt as to [Petitioner's] guilt[.]" *Strickland*, 466 U.S. at 695 . . . . Because there is no record about trial counsel's failure to investigate Escamilla and Rubio, there is an issue as to whether an evidentiary hearing on the matter is appropriate . . . . We conclude that [Petitioner] is entitled to an evidentiary hearing because "his allegations, if proved, would entitle him to relief." *Hurles* [*v. Ryan*], 752 F.3d [768,] 791-92 [(9th Cir. 2014)] . . . . "[W]e REVERSE and REMAND for an evidentiary hearing before the district court on [Petitioner's] *Strickland* claim to consider whether trial counsel was deficient as well as Escamilla and Rubio's credibility.

(ECF No. 64 at 8-12). The Report and Recommendation correctly states that the district court is limited on remand by the scope of the mandate. The Report and Recommendation correctly concludes that the scope of the remand is limited to "conduct[ing] 'an evidentiary hearing on counsel's failure to interview *the two witnesses*', Escamilla and Rubio," which "requires assessing the credibility of the two declarants and whether trial counsel was deficient in not calling them to testify." (ECF No. 158 at 10-11 (quoting ECF No. 64 at 5)).

On remand, the Magistrate Judge properly considered new evidence relevant to Escamilla and Rubio's credibility and Ronis's deficiency. The Magistrate Judge admitted the police reports obtained after appeal into evidence for the purposes of impeachment and for their effect on Ronis in his preparation for Petitioner's trial. (*See id.* at 112). The Magistrate Judge considered the contents of the police reports and testimony from witnesses at the hearing in determining that Escamilla and Rubio are not credible and that Ronis was not deficient for failing to interview them or call them to testify. In addition,

although the Report and Recommendation concludes that Petitioner's additional claims regarding Ronis's deficiency are outside the scope of the remand, the Magistrate Judge allowed Petitioner to present exhibits and witness testimony related to Petitioner's claims that Ronis was deficient failing to interview and present the testimony of witnesses other than Escamilla and Rubio and for selecting the defenses of self-defense and accident.[8] The Report and Recommendation dedicates nineteen pages to analyzing these additional claims on the merits and concludes that Ronis's decision not to investigate and present the testimony of witnesses other than Escamilla and Rubio was reasonable, and Ronis was not deficient for presenting defenses of self-defense and accident at trial. (*See id.* at 91-92 ("While the Court finds that Petitioner's argument about the witnesses who observed the shooter wearing a cowboy hat or being of Asian descent are outside the scope of the remand, . . . Ronis' decision not to further investigate this string of 'cowboy hat' witnesses regarding a potential second shooter defense [was] reasonable."); *id.* at 92 ("Notwithstanding the Ninth Circuit's remand to apply the deficiency prong to trial counsel Ronis's alleged failure to interview declarants Rubio and Escamilla, this Court also finds that Ronis' actions in not presenting a second shooter defense were reasonable, the decision was based on sound trial strategy, and it does not constitute ineffective assistance of counsel.")).

Having reviewed the Report and Recommendation's conclusions regarding the scope of the mandate de novo, the Court concludes that the Report and Recommendation correctly identifies the scope of the remand and that the Magistrate Judge considered evidence relevant to Petitioner's ineffective assistance of counsel claim that was obtained after the court of appeals' mandate.

---

[8] The only witness on Sandy Barajas' list who testified at the hearing was Sylvia Escamilla, whom the Magistrate Judge found not credible. The only witness who identified a shooter in the police reports who did not match Petitioner's description who testified at the hearing was Daniel Alatorre, whom the Magistrate Judge found not credible.

## V.   FINDINGS OF FACT

At the hearing on remand, the Magistrate Judge admitted into evidence Respondent's "Exhibit M"—"the police reports Ronis received from the District Attorney's office." (*Id.* at 51). The Magistrate Judge admitted the police reports "not for the truth of the matters asserted, but for the purposes of impeachment and for the effect of these reports on Jan Ronis in his preparation of Petitioner's defense at trial." (*Id.* at 112). The Report and Recommendation states:

> More than ninety potential witnesses amongst party-goers and residents surrounding KP Hall were interviewed about the shooting. Their responses are documented in various police reports. (*See* Ex. M.) Of the total potential witnesses, over seventy did not see the shooting and/or only heard shots fired. (*Id.*) . . . . Critically, no witnesses to the shooting described a second shooter or anyone else brandishing or using a gun during the altercation. (*See* Ex. M.)
>
> Eight witnesses stated Petitioner . . . was shooting the gun and provided detailed statements to the police: Eva Gallegos (*id.* at 8, 62); Roman Rodriguez Rubio (*id.* at 47-48, 69-70); Joaquina Soltero (*id.* at 24, 37, 52-53); the victim, Pedro Arturo Rivera (*id.* at 24, 26, 75-77); Norma Soltero (*id.* at 27, 72-73); Adan Rivera (*id.* at 56-58, 64-66); Juan Bolanos (*id.* at 79-80); and Herman Lopez (*id.* at 80). Additionally, . . . Sylvia Escamilla initially stated she saw Petitioner fire the gun up into the air. (*Id.* at 37; Ex. A.)

(*Id.* at 51 (footnotes omitted)). The Report and Recommendation states that "Pedro Arturo Rivera, the victim, provided a detailed account of Petitioner shooting him in the eye." (*Id.* at 52). The Report and Recommendation states that Pedro Arturo Rivera told police that he "'turned around and saw [Petitioner] shoot at him. Pedro saw the muzzle flash from the gun . . . [and] felt a pain in his head . . . . After being shot, Pedro believed [Petitioner] was going to continue to shoot him.'" (*Id.* at 52 (quoting Ex. M at 77)). The Report and Recommendation further states that "five witnesses to the shooting who did not know Petitioner's name, Jose Sanchez, Antoinette Gonzales, Daniel Alatorre, Beginia Carillo, and Olivia Addison, described the shooter as a thin Hispanic male . . . ." (*Id.* at 53; *see also id.* at 94-96 (describing witness statements)).

1    Petitioner objects to the "Report and Recommendation's findings of fact based on
2    police reports." (ECF No. 165 at 29). Petitioner contends that the court of appeals stated
3    that none of the witnesses saw Petitioner shoot Arturo, and "the Magistrate Judge attempts
4    to create a different impression in efforts to justify that Ronis was not deficient." (*Id.* at
5    30). Petitioner contends that the witness statements in the police reports are not admissible
6    to prove the truth of the matter asserted. Petitioner contends that none of the prosecution
7    witnesses saw Petitioner shoot Arturo, and Petitioner testified at trial that he did not chase
8    or shoot Arturo. Therefore, "any suggestion that anyone saw Espinoza shoot Arturo in the
9    eye [is] refuted by the evidence." (*Id.* at 31).

10    Respondent contends that that the Report and Recommendation's conclusions are
11    legally and factually correct.

12    The Magistrate Judge properly admitted the police reports into evidence and
13    considered the police reports, "not for the truth of the matters asserted, but for the purposes
14    of impeachment and for the effect of these reports on Jan Ronis in his preparation of
15    Petitioner's defense at trial." (ECF No. 158 at 112). The court of appeals only had the trial
16    record before it when it stated that "none [of the prosecution's witnesses] actually saw
17    [Petitioner] shot Arturo." (ECF No. 64 at 8). The court of appeals did not have access to
18    the police reports that the Magistrate Judge admitted into evidence on remand. (*See* ECF
19    No. 158 at 96 ("The Ninth Circuit did not have the benefit of knowing these witness
20    statements were contained in the police reports Ronis reviewed prior to Petitioner's
21    trial.")). The victim, Arturo Rivera, who did not testify at Petitioner's trial, identified
22    Petitioner in the police reports as "the person who shot [him]." (Ex. M at 77). Other
23    witnesses identified Petitioner in the police reports as the person they saw shooting the gun
24    at Arturo Rivera before they saw Rivera fall to the ground. (*See, e.g.*, *id.* at 27, 37). Having
25    reviewed the Report and Recommendation's findings of fact regarding the police reports
26    de novo, the Court concludes that the Report and Recommendation's factual findings are
27    an accurate statement of the contents of the police reports.
28    ///

14

## VI.   TRIAL COUNSEL'S DEFICIENCY

The Report and Recommendation concludes that "Ronis was not deficient in failing to interview Escamilla and Rubio as witnesses or to call them to testify" (ECF No. 158 at 82 (footnote omitted)). The Report and Recommendation further concludes that although "outside the scope of the remand," "Ronis' decision not to further investigate [the] string of 'cowboy hat' witnesses regarding a potential second shooter defense [was] reasonable," and "Ronis' actions in not presenting a second shooter defense were reasonable, the decision was based on sound trial strategy, and it does not constitute ineffective assistance of counsel" (*id.* at 91-92).

Petitioner objects to the Report and Recommendation's conclusion that Ronis was not deficient. Petitioner contends that Ronis was deficient in failing to conduct sufficient pretrial investigation and in selecting and presenting a defense. Petitioner contends that Ronis failed to interview any witnesses, and his failure to "at least interview the witnesses identified in the police reports," including Daniel Alatorre, Sylvia Escamilla, and Miguel Rubio, "cannot be justified." (ECF No. 165 at 46). Petitioner contends that Ronis's decision not call these witnesses at trial, was not a tactical decision because Ronis did not know if the witnesses would be useful. Petitioner contends that Ronis did not have sufficient facts to determine the appropriate defense. Petitioner contends that Ronis's statement that Petitioner told Ronis he was the shooter is false and inconsistent with Petitioner's trial testimony. Petitioner asserts that his statements to Ronis do not absolve Ronis of his duty to independently investigate.

Respondent contends that the Report and Recommendation's conclusion that Ronis was not deficient is legally and factually correct. Respondent contends that "a second shooter theory cannot be said to be stronger than the accident theory, which actually produced a hung jury on the attempted murder charge." (ECF No. 170 at 9). Respondent contends that based on Petitioner's trial testimony that there was only one gun and that Petitioner was the only person with a gun, a witness would have had to see two shooters

15

with two guns to corroborate a second shooter theory. Respondent contends that no witness statements in the police reports indicate that any witness saw two different guns.

To obtain habeas relief for ineffective assistance of counsel, a petitioner "first . . . must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Second, the defendant must show that the deficient performance prejudiced the defense," which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The petitioner must establish both deficient performance and prejudice to establish ineffective assistance of counsel. *Id.* "Recognizing the 'tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence,' . . . counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 689-90). "To overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'" *Id.* (quoting *Strickland*, 466 U.S. at 688).

"[C]ounsel must, at a minimum, conduct a reasonable investigation enabling him to make informed decisions about how to best represent his client." *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994) (emphasis omitted) (citing *Strickland*, 466 U.S. at 691). "This includes a duty to investigate the defendant's most important defense,' *Sanders*, 21 F.3d at 1457, and a duty adequately to investigate and introduce into evidence records that demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence in the verdict." *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001) (citing *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999)). However, "the duty to investigate and prepare a defense is not limitless,' and [ ] 'it does not necessarily require that every conceivable witness be interviewed or that counsel must pursue every path until it bears fruit or until all conceivable hope withers.'" *Hamilton v. Ayers,* 583 F.3d 1100, 1129 (9th

Cir. 2009) (quoting *United States v. Tucker*, 716 F.2d 576, 584 (9th Cir. 1983)). "A claim of failure to interview a witness . . . cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel." *Bragg*, 242 F.3d at 1088 (quoting *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986)). "When the record clearly shows that the lawyer was well-informed, and the defendant fails to state what additional information would be gained by the discovery he or she now claims was necessary, an ineffective assistance of counsel claim fails." *Id.* (citing *Eggleston*, 798 F.2d at 376). "Counsel is not obligated to interview every witness personally in order to be adjudged to have performed effectively." *Lord v. Wood*, 184 F.3d 1083, 1095 n.8 (9th Cir. 1999). "Few decisions a lawyer makes draw so heavily on professional judgment as whether or not to proffer a witness at trial." *Id.* at 1095.

"To determine the reasonableness of a decision not to investigate, the court must apply 'a heavy measure of deference to counsel's judgments.'" *Babbitt v. Calderon*, 151 F.3d 1170, 1174 (9th Cir. 1998) (quoting *Strickland*, 466 U.S. at 691), *as amended* (Aug. 27, 1998).

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

*Strickland*, 466 U.S. at 691.

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that

17

pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

*Id*.

"A defense attorney's failure to consider alternate defenses constitutes deficient performance when the attorney 'neither conducts a reasonable investigation nor makes a showing of strategic reasons for failing to do so.'" *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) (quoting *Sanders*, 21 F.3d at 1456). However, once counsel reasonably selects a defense, his duty to investigate other defenses that would "directly conflict[ ] with the [chosen] defense theory end[s]." *Turk v. White*, 116 F.3d 1264, 1267 (9th Cir. 1997), *as amended* (June 20, 1997) (explaining that "[a]fter [counsel] reviewed the preliminary facts of the case, he reasonably decided that he would pursue only a theory of self-defense. Even if [defendant] told [counsel] of his mental problems, [counsel] did not need to investigate [defendant]'s competency"). "[T]he viability of the selected defense bears on the reasonableness of counsel's actions." *Bohana v. Vaughn*, 389 F. App'x 600, 602 (9th Cir. 2010) (citing *Turk*, 116 F.3d at 1267). "In previous cases where [the Court of Appeal for the Ninth Circuit] found counsel ineffective for failing to investigate and present alternative defenses, the defenses selected were not viable and there were multiple witnesses that counsel failed to investigate who would have easily yielded contradictory evidence to the selected defenses." *Id.*

In this case, the Report and Recommendation correctly identifies and applies the deferential standard for determining whether counsel was deficient. The record does not demonstrate that Ronis failed to interview any witnesses or failed to conduct pretrial investigation to determine the appropriate defense. The Magistrate Judge found that Ronis credibly testified at the hearing that he reviewed and was familiar with all police reports and that any important witnesses would have been interviewed. Petitioner fails to identify

18

any information that would have been gained by interviewing the witnesses identified in the police reports. The only witnesses to the shooting who submitted declarations stating that there was a second shooter were Sylvia Escamilla and Miguel Rubio. Rubio did not testify at the hearing, and the Magistrate Judge concluded that Rubio's declaration is inadmissible hearsay and not credible. Escamilla testified at the hearing, and the Magistrate Judge concluded that Escamilla is not credible. Daniel Alatorre was the only witness who testified at the hearing that he saw a shooter who did not match Petitioner's description, and the Magistrate Judge found Alatorre not credible. No other witness testified at the hearing who identified a shooter in the police reports with physical characteristics different from Petitioner—wearing a cowboy hat or sombrero, or of Asian descent. None of the witnesses in the police reports stated that there was more than one shooter. There is no evidence in the record that at the time Ronis was preparing for trial there was any indication of a second shooter or that any witness would have testified to seeing a second shooter. In addition, any witness testimony at trial that there was a second shooter would have conflicted with Petitioner's own testimony that "there was only one gun," that he "never saw anybody else with a gun," and that he was "the only person with a gun." (Lodgment 2, vol. 5, at 751-52). The Report and Recommendation correctly concludes that Petitioner fails to demonstrate by a preponderance of the evidence that Ronis failed to conduct sufficient pretrial investigation. The Report and Recommendation correctly concludes that Ronis was not deficient for failing to interview or call Rubio, Escamilla, Alatorre, or the other "cowboy hat" witnesses at trial.

Further, the Report and Recommendation correctly concludes that Ronis's decision to proffer a self-defense and accident theory of defense was reasonable based on the police reports, the forensic evidence that the bullets all came from the same gun, Petitioner's statements to Ronis that he was the shooter, and on Petitioner's own testimony at trial that he was the only person with a gun. A second shooter defense would have been a weaker choice. Having reviewed the Report and Recommendation's conclusion that Ronis was not deficient de novo, the Court concludes that the Report and Recommendation's correctly

determines that Ronis was not deficient. *See Bragg*, 242 F.3d at 1088 ("[Petitioner] does nothing more than speculate that, if interviewed, [the witness] might have given information helpful to [Petitioner]. There is no evidence that investigating [the witness] would be akin to investigating the most important defense.").

## VII.   CERTIFICATE OF APPEALABILITY

A certificate of appealability must be obtained by a petitioner in order to pursue an appeal from a final order in a Section 2254 habeas corpus proceeding. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). It must appear that reasonable jurists could find the district court's assessment of the petitioner's constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). The Court concludes that reasonable jurists could find debatable the scope of the mandate and whether this Court was correct in denying Petitioner's ineffective assistance of counsel claim. A certificate of appealability is granted as to claim three of the Petition.

## VIII.   CONCLUSION

IT IS HEREBY ORDERED that the Report and Recommendation (ECF No. 158) is adopted in full.

IT IS FURTHER ORDERED that Petitioner's Objections to the Report and Recommendation (ECF No. 165) are overruled.

IT IS FURTHER ORDERED that the Petition for Writ of Habeas Corpus (ECF No. 1) is denied. A certificate of appeal is granted as to claim three.

Dated:  November 9, 2020

*William Q. Hayes*

Hon. William Q. Hayes
United States District Court